UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20686-CR-JORDAN

UNITED STATES OF AMERICA

vs.

MELVIS RAMIREZ SAIZ,

      **Defendant.**

_____/

## FACTUAL PROFFER

The government and the defendant, Melvis RAMIREZ Saiz, agree that, at trial, the government would have proven the following facts beyond a reasonable doubt:

On June 25, 2009, a fraud investigator at South Florida Educational Federal Credit Union ("SFEFCU") informed the USSS that four (4) SFEFCU credit card accounts, each belonging to real customers of the credit union, had been compromised. According to the credit union, the total actual fraud loss on these four (4) accounts was $3,022.19.[1] The investigator identified for the USSS the common point of compromise for the four (4) cards: the Burger King restaurant at 3051 Coral Way, Miami, FL 33145.

On July 8, 2009, Burger King's regional manager provided USSS agents with receipts of the four (4) transactions involving the compromised credit cards. The receipts indicated that one server, the defendant, had handled all four (4) of the compromised cards.

On July 16, 2009, USSS agents interviewed the defendant at her Miami home. The defendant, who verbally agreed that she was not in custody, admitted to skimming, or swiping with a credit card skimming device, the credit cards of Burger King's customers while she was working

---

[1] The credit union has not provided the amount of intended fraud loss.

in the drive-through window. The defendant explained that her live-in boyfriend, Hector Jornet SOUTO, had given her a credit card skimming device with instructions to skim the credit card numbers of the restaurant's customers without their knowledge or consent.

The defendant then produced a set of keys to SOUTO's car, which was in the driveway, and retrieved from that car – and gave to the agents -- a credit card skimming device.

The defendant agreed to cooperate with the agents and followed them in SOUTO's car to the USSS Miami Field Office, where she waived her *Miranda* rights verbally and in writing. The defendant said that SOUTO had provided her with the skimming device several months earlier, and that she had used the device to skim the credit card numbers of her drive-through customers. The defendant explained that SOUTO would sell the stolen numbers to an individual she never met and did not know. Between April and June 2009, the defendant said, SOUTO sold this individual the credit card account numbers of approximately 120 of her customers; in return, the individual paid SOUTO approximately $1,500 dollars, which SOUTO then shared with the defendant.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

Date: 09/25/09     By: _____
                   ROY K. ALTMAN
                   ASSISTANT UNITED STATES ATTORNEY

Date: 9/25/09      By: _____
                   ANDRE PIERRE
                   ATTORNEY FOR DEFENDANT

Date: 9/25/09      By: _____
                   MELVIS RAMIREZ SAIZ
                   DEFENDANT

9. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

Date: _____  By: _____
ROY K. ALTMAN
ASSISTANT UNITED STATES ATTORNEY

Date: _____  By: _____
ANDRE PIERRE, ESQ.
ATTORNEY FOR DEFENDANT

Date: _____  By: _____
MELVIS RAMIREZ SAIZ
DEFENDANT